## No. 11,028.

## A. DARCANTEL ET AL. VS. THE PEOPLE'S SLAUGHTER HOUSE AND REFRIGERATING COMPANY ET ALS.

1. Article 248 of the Constitution delegates to the city of New Orleans the complete and exclusive police power inherent in the sovereign over the whole subject of slaughtering animals within the corporate limits, subject to no limitations except that imposed by the terms of the article itself.

2. The decision of the U. S. Supreme Court in the slaughter house cases shows that this police power is more than ample to cover the ordinances assailed in this case.

3. The limitations imposed on the power by Art. 248 are three, viz. 1. That no monopoly or exclusive privilege shall be granted. 2. That the business shall not be restricted to the lands and houses of any individual or corporation. 3. That the city's action must receive the approval of the Board of Health.

4. Nothing in these ordinances makes the grant to defendants monopolous or exclusive, or restricts the business to their lands or houses. The city retains the perfect right to permit other slaughter houses within the limits designated or elsewhere.

5. No person is before us complaining of any infringement of his equal rights to carry on the business of slaughtering. We will determine such questions when they arise, which may never happen. The unrestricted right to all persons to set up slaughter houses within the limits designated would aggravate, rather than relieve, the injuries complained of by these plaintiffs.

6. The ordinances have received the concurrent approval of the Board of Health. The fact that this approval was only given after having been first refused does not affect the case. The city did not repeal or cancel the ordinance, but persists in the same; and remaining ineffective while not pproved, it acquired executory force as soon as it received the concurrent approval of the Board of Health.

7. The Constitution fixes no time or mode in which the approval shall be made. When the ordinances and the approval coexist, the constitutional requirement is satisfied.

8. The function exercised by the Board of Health is not properly legislative. The board can not pass or amend the ordinance. It can only say whether it approves or disapproves.

9. While the valid legislative authority under which defendants act may not exempt them from compensatory liability for private injuries inflicted on others, it is a complete bar to an injunction in advance.

NEW ORLEANS, MAY, 1892. 633

Darcantel et al. vs. Slaughter House Co. et als.

10. The principle that a party may prevent by injunction the doing of an act which would give him a claim for damages must be confined to unlawful acts. The acts here sought to be enjoined are strictly lawful, made so by the valid ordinances passed under constitutional authority.

11. It would be a complete nullification of the power granted by the Constitution if private parties might enjoin in advance the execution of ordinances passed in pursuance thereof.

APPEAL from the Civil District Court for the Parish of Orleans. Ellis, J.

## Henry Denis for Plaintiffs and Appellants:

1. Under Art. 248 of the Constitution and the charter of the city of New Orleans, Act of 1882, the council has the power to regulate the slaughtering of animals within the limits of the city, but not to establish any particular slaughter house. The power to regulate is distinct from the power to establish or create. Dillon, Munic. Corp., Secs. 362 and 380, *et seq.*; First Municipality vs. Cutting, 4 An. 336; Chicago vs. Rumpff, 45 Ill. 90.

2. The city of New Orleans can not grant a franchise unless the power has been delegated to it by the State. Tilton vs. R. R. Co., 35 An. 1069.

3. A private nuisance may be prevented or abated by injunction even when it is established under legal authority. Blanc vs. Murray, 36 An. 162; Baltimore R. R. Co. vs. Church, 108 U. S. 317.

4. A slaughter house in the midst of residences is necessarily a private nuisance. Villavaso vs. Barthet, 39 An. 247; Wood on Nuisances, Sec 751, *et seq.*; High on Injunctions, Sec. 772, *et seq.*

5. A party can always prevent by injunction the performance of an act which, if done, would give him a claim for damages. Carraby vs. Morgan, 5 N. S. 501; Slaughter House Co. vs. Larrieux, 30 An. 800, and cases cited therein.

## E. Howard McCaleb on the same side:

1. In exercising " the power of regulating the slaughtering of cattle and other live stock" delegated by the Constitution the city of New Orleans can not create a monopoly, nor restrict the business to the land or houses of any individual or corporation. Constitution, Art. 248. The city was only authorized to pass general ordinances upon this subject, permitting all persons desiring to do so to engage in the business within the locality selected upon an equal footing, subject to the same restrictions and regulations. The council can not grant this right to one and withhold it from all others without violating the Constitution, which recognizes the great principle of republican government—equal rights to all; special privileges to none.

2. The Board of Health has never concurred in the ordinances designating the place for slaughtering, and defendants' grant is therefore imperfect and incomplete, for the reasons:

(a) That concurrence having been refused on the 14th of May by the Board of Health, and the city notified, it was too late to reconsider the vote and concur on the 8th of October following (twenty-one meetings having been held in the interim).

'634                    SUPREME COURT OF LOUISIANA.

Darcantel et al. vs. Slaughter House Co. et als.

(*b*) The y eas and nays having been called on the motion to concur, a motion to reconsider could only be made by a person who voted on the prevailing side, and not by a new member—not present when the original vote was taken. Fish's Am. Manual of Parliamentary Law, p. 91.

(*c*) If the motion to concur had been adopted, it could not have been reconsidered five months thereafter (twenty-one meetings having intervened), "for action, partaking of the nature of a contract, can not be reconsidered." Fish's Am. Manual, p. 45. *Argumentum e converso valebat.*

(*d*) In designating the places for slaughtering, the City Council and Board of Health occupy the same relation toward each other as the two houses of a legislative assembly: where one house has refused to concur in a bill originating in the other, and it has been returned, it can not be reconsidered and again acted upon without first recalling and obtaining possession of the bill. No action can be had upon a bill which is no longer in possession of the House. (Cushing's Law and Practice of Legislative Assemblies, 1274.) The Board of Health could not reconsider and reverse its action, refusing to concur in the ordinance in question, after notification to the city, without first recalling and getting possession of the ordinance.

(*e*) An interpretation previously placed upon a parliamentary rule, relative to motions to reconsider by the Board of Health, will be followed in case of doubt. (*f*) If the ordinance relied upon by defendants has never been legally concurred in by the Board of Health, the preventive writ of injunction sued out in this case should be perpetuated. 37 An. 280; Wood on Law of Nuisances, Secs. 788, 789, 790.

### *J. R. Beckwith* for Defendants and Appellees:

1. The municipal and health authorities of the city of New Orleans and parish of Orleans are vested by law with the control and regulation of slaughter houses and the slaughtering of animals for human food in the city and parish of Orleans, and have authority to designate the locality in which slaughtering shall be carried on. State Constitution, Art. 248; O. C. 669.

2. The police authorities having licensed and authorized the establishment of slaughter houses within prescribed limits, the industry can be lawfully carried on within the limits prescribed, and neither the public nor any individual can, while the license lasts, interfere by an injunction to prevent the establishment of the business if carried on within the scope of the license. Their only action, if any, is an action for damages, if the business is negligently, carelessly or improperly carried on so as to cause more damage than is incident to the business carefully and properly conducted, nor until they have actually suffered such damage from such cause. Robb. vs. Carnegie & Co., 22 Atlantic Rep. 649, 651; Coal Company vs. Sanderson, 113 Pa. State Rep. 126; 6 Atlantic Rep. 453; Huckenstine's Appeal, 70 Pa. State Rep. 102; Railroad Co. vs. Lippincott, 116 Pa. State Rep. 472; Ballentine vs. Webb, 47 N. W. Rep. 485; Attorney General vs. Nichol, 6 Ves. 342; Zabriskie vs. Railway Co , 13 New Jersey Eq. 314; 2 Story Equity Jur., Sec. 925; Gilbert vs Showerman, 23 Mich. 448; Cleveland vs. Gaslight Co., 20 New Jersey Eq. 205; Rex vs. Rease, 4 B. and Ad. 30; Rex vs. Morris 4 B. and Ad. 441; State vs. Turnpike Co., 24 N. J. L. 547; Commonwealth vs. Hancock Free Bridge, 2 Gray (Miss ) 58; State vs. Scott, 2 Swan (Tenn.) 332; State vs. Parrott, 71 N. C. 311; People vs. Gaslight Co., 64 Burt. 55; Imperial Gas Co. vs. Broadbent, 7 H. L. 605; Carhart vs. Gaslight Co., 22 Burt. 297; People vs. Platt, 17 Johns, 195 ; Davis vs. Mayor, 14 N. Y. 506; Harris vs. Thompson, 9 Burt. 350.

The opinion of the court was delivered by

FENNER, J. The following ordinance and amending ordinance were adopted by the City Council of New Orleans:

## No. 5180—COUNCIL SERIES.

" WHEREAS, The sanitary conditions and conveniences of slaughter houses supplying this city are defective and obsolete, and constitute a monopoly contrary to Art. 248 of the Constitution of Louisiana; and

" WHEREAS, The inspection now provided by law is deficient and beyond the control of the city of New Orleans; and

" WHEREAS, It is of vital importance that all the articles of human food be subjected to a right inspection; and

" WHEREAS, Article 248 of the Constitution guarantees to every parish and municipality the undoubted right and privilege to establish slaughter houses within the respective limits; therefore

" SECTION 1. *Be it resolved,* That permission is hereby granted to A. J. Forstall, Pierre Lanaux, J. W. Westerfield, J. Trisconi, their heirs and assigns, for the term of fifty years, to construct, use, maintain and operate a plant for the landing, penning, sheltering and slaughtering of all kind of live stock; to construct, use, maintain and operate, in connection with the above plant for the manufacture of ice and other cooling and refrigerating substances, with a view of keeping, preserving, refrigerating or freezing the carcasses or other parts of the various animals slaughtered in said above mentioned establishment; and to sell or dispose of to others the meats so slaughtered or refrigerated, and also the ice and other refrigerating substances which may be in excess of their consumption; and generally to conduct and carry on a slaughtering and refrigerating business in all its branches, storing, importing and exporting.

" SEC. 2. *Be it further resolved,* That the said persons or corporation shall execute a bond with one or more good and solvent sureties to the satisfaction of his honor the mayor, in favor of the city of New Orleans, in the sum of twenty thousand dollars ($20,000), conditioned that the said persons or corporation shall not at any time sell, transfer or dispose of this franchise to any persons or corporation, except for the purpose of organizing a company or corporation to carry into effect this resolution, and in any case of sale, disposition or transfer, for any other purpose, this resolution shall become null and void, and shall be of no force or effect.

"Sec. 3. *Be it further resolved,* That there shall be appointed by the Board of Health and confirmed by the City Council a special inspector who shall be a veterinary surgeon, or a person skilled in the knowledge of the diseases of cattle, whose duty it shall be to inspect the carcasses and interior organs of all animals intended for food, and who shall have power to destroy and throw away any diseased or unhealthy meat unfit for food; that the Board of Health, with the concurrent approval of the City Council, or either, shall have the right to remove said inspector for cause; that said inspector shall receive a salary to be fixed by the City Council, and which shall not exceed the sum of one hundred dollars per month, to be paid monthly through the treasury of the city by the persons or corporation availing themselves of the privileges of this ordinance. It being well understood that this shall in no manner dispense with the inspection now provided by law.

"Sec. 4. *Be it further resolved,* That all pen slaughter houses, refrigerators, constructed and operated under this ordinance shall be constructed upon plans and specifications approved by the City Council and the Board of Health; and shall be supplied with all modern conveniences necessary to carry on the business contemplated, and to remove daily, according to law, all the offal, droppings and blood from slaughtered animals.

"Sec. 5. *Be it further resolved,* That there shall not be allowed within a radius of two thousand feet of said slaughter houses and refrigerators any establishment for rendering dead animals, or those known as bone yards.

"Sec. 6. *Be it further resolved,* That all ordinances, or parts of ordinances, in conflict with the provisions of this ordinance, and especially Ordinance No. 7336, A. S., entitled 'An ordinance designating the places of slaughtering animals intended for food in the parish of Orleans, under Art. 248 of the Constitution.'

"And Ordinance No. 1409, C. S., entitled 'An ordinance regulating the slaughtering of animals within the limits of the city of New Orleans.'

"And providing for the designation of the places for slaughtering the same, and repealing all provisions of Ordinance No. 7376, A. S., adopted October 13, 1881, and Ordinance No. 7437, A. S., adopted November 18, 1881, designating the territorial limits within which slaughtering could be done within the city of New Orleans.

"And Ordinance No. 2709, C. S., granting permission to Louis Barthet to reopen and operate a slaughter house under certain conditions, within the city of New Orleans..

"And Ordinance No. 2911, C. S., granting permission to any person or persons, etc., to erect slaughter houses within certain limits.

"And Ordinance No. 3710, C. S., granting permission to the New Orleans Slaughter House and Live Stock Company, Limited, to erect and operate a slaughter house under certain conditions and restrictions, be and the same are hereby repealed, except in so far as this may affect any and all slaughter houses now operated in this city, under any ordinance, resolution or State law."

### No. 5242—COUNCIL SERIES.

"An ordinance amending and re-enacting Ordinance No. 5180, C. S., granting permission to A. J. Forstall and others to erect and maintain a plant for the slaughtering of cattle, etc.:

"*Be it ordained by the Council of the City of New Orleans*, That Ordinance No. 5180, C. S., be and is hereby amended by adding, after the last word in Sec. 1, the following: 'Within the area comprised between the Mississippi river and St. Claude street, the projected line of Caffin avenue and Adams street, in the third municipal district of this city.'

"*Be it further ordained, etc.*, That Ordinance No. 5180, C. S., as herein amended, be and is hereby re-enacted, and shall not be construed as granting an exclusive privilege.

"Adopted by the Council of the city of New Orleans, April 21, 1891."

These ordinances were approved by the Board of Health in the following resolution:

"WHEREAS, It is important and indispensable for the health of the inhabitants of the city of New Orleans that the inspection of the sanitary condition of all animals destined to be slaughtered for human food, before slaughter, as well as the inspection of animal food and meats intended for consumption as human food by the inhabitants of this city, should be under the complete control of the board and within its territorial jurisdiction, and the inhabitants of this city ought to have better protection against the spread of disease, through the medium of diseased animal food, than can be expected from the action of the health officers of rural parishes, acting beyond

638          SUPREME COURT OF LOUISIANA.

Darcantel et al. vs. Slaughter House Co. et als.

the local jurisdiction of the authorities of the parish of Orleans and not having local interest therein;

" *Be it resolved*, That this board reconsider its action in the matter of the application of A. J. Forstall, Pierre Lanaux, J. M. Wester-field and J. Trisconi, the persons named in the ordinance of the city of New Orleans, No. 5180, Council Series, adopted respectively March 31, 1891, and April 21, 1891, for the action of this board, under Art. 248 of the Constitution of the State, in approval of the location of the slaughter house provided for in said city ordinances ' within the area comprised between the Mississippi river and St. Claude street, the projected line of Caffin avenue and Adams street, in the third municipal district of this city,' and acting under the au-thority conferred on this board by Art. 248 of the Constitution and the law of the State, does now concur with the council of the city of New Orleans in said ordinance designating the place for slaughtering as located in said Ordinance No. 5180, Council Series, as amended by said Ordinance No. 5242, Council Series, approved April 22, 1891, subject to all of the conditions and restrictions contained therein. The board reserving to itself the full right to the inspection of all plans for the construction of said slaughter house, and requiring the same to embody and contain the most approved modern devices and appliances for maintaining, not only the sanitary conditions and health of animals before slaughter, but the preservation of meats between slaughter and sale and the prompt removal and disposition of blood and all other offal, and the perfect cleanliness of the live stock stalls and the premises and surroundings (but any officers or committee of this board, or any other officer designated by this board, shall at all times, and without previous notice, have free access to all parts of said premises for purposes of inspection and report to this board), and the proprietor or proprietors of said slaughter house shall promptly comply with any order or request of this board in any matter relating to the sanitary conditions of said premises, whether it relates to the slaughtering, removal of offal or the condition, sur-rounding or health of animals before slaughter or meats after slaughter, with the right to condemn all diseased animals and meats determined to be not fit for human food, besides to exercise all other rights and powers conferred on the board by the Constitution and laws of the State, and that the mayor and City Council be notified of this action."

Under these ordinances the defendants were about to proceed in the establishment of a slaughter house in conformity therewith, when the plaintiffs, who are property owners and residents in the vicinity of the premises, brought this suit to restrain them by injunction.

From a judgment of the District Court dissolving the injunction and rejecting their demand the plaintiffs appeal.

The grounds of injunction, so far as pressed in this court, are three, viz.:

1. That the ordinance of the City of New Orleans granting to the defendants the right to establish the said slaughter house is illegal and unconstitutional.

2. The Board of Health has never concurred in the ordinances designating the place for slaughtering, and defendants' grant is therefore imperfect and incomplete.

3. That the establishment of a slaughter house in the immediate vicinity of the plaintiffs' residences would constitute an intolerable nuisance, which they have the right to enjoin, even if it were to be established under legal authority.

We shall consider the several grounds in the above order.

## I.

Article 248 of the Constitution provides that: "The police juries of the several parishes, and the constituted authorities of all incorporated municipalities of the State, shall alone have the power of regulating the slaughtering of cattle and other live stock within their respective limits; provided, no monopoly or exclusive privilege shall exist in this State, nor such business be restricted to the land or houses of any individual or corporation; provided, the ordinances designating the places for slaughtering shall obtain the concurrent approval of the Board of Health or other sanitary organization."

In construing the scope and meaning of this article, this court has already used the following strong and emphatic language:

"From the language of the article it appears that the framers of the Constitution intended to vest in the enumerated subdivisions of the State, within their respective limits, the whole power inherent to a sovereign touching the regulation of the slaughtering of animals for food. The power thus delegated is as complete, unrestrained and unshackled as it originally existed in the State itself, and its

exercise can be circumscribed by no limits or conditions which could not apply to the State or to the sovereign whence it emanates.

"Its description in American jurisprudence is the police power, a governmental power which can not be the subject of a contract, and to the exercise of which no estoppel can be interposed." Villavaso vs. Barthet, 39 An. 252.

We have thus held that the Constitution of the State confers upon the City of New Orleans the whole police power over this subject, which belongs to the State herself, and subject to no limitations except those expressly imposed by the terms of the constitutional grant itself.

When we inquire into the nature and extent of the police power over this subject inherent in the State, in absence of voluntary abdication or limitation thereof by her organic law, the decision of the Supreme Court of the United States in the famous Slaughter house cases shows that it is more than ample to authorize such an exercise thereof as is presented by the ordinance under consideration, and places it beyond question that the ordinance violates no provision of the Constitution of the United States. Slaughter House Cases, 16 Wall. 36.

This decision further eliminates all applicability of the following decisions, and others like them, to the instant case: Yick Wo vs. Hopkins, 118 U. S. 356; State vs. Mahner, 43 An. 496; State vs. Garibaldi, 44 An.

These latter cases relate to such businesses as laundries, dairies and private markets, as to which the necessity of police control is less exigent, and moreover, the municipal ordinances therein involved were not sustained by any such broad grant of power as that delegated by our Constitution over the subject of slaughter houses.

Our inquiry is, therefore, narrowed to the question whether or not the ordinance violates Art. 248 of the State Constitution.

When we analyze that article, we find only three limitations imposed on the city's power over this subject, which, as above shown, we have held to embrace the whole police power of the State, except so far as thus limited.

These limitations are:

1. That no monopoly or exclusive privilege shall be granted.

2. That the business shall not be restricted to the land or houses of any individual or corporation.

3. That the city's action must receive the concurrent approval of the Board of Health.

The Constitution imposes no other limitations and we can add none.

These ordinances simply grant to certain persons, who applied for the same, the privilege of establishing and operating a slaughter house within certain designated limits, upon certain terms and conditions. No monopolous or exclusive privilege is conferred by either the terms or any possible construction of the ordinance, nor does it contain any provision restricting the business of slaughtering to the land or houses of defendants. Nothing prevents the city from permitting the establishment of other slaughter houses by other persons, either within the limits designated or, for that matter, elsewhere.

The decision in the slaughter house cases, above referred to, distinctly recognized the right of the State, in the exercise of its inherent police power, to establish public slaughter houses or to delegate the power of establishing such either to a municipal corporation, or to a private corporation or to individuals; and the court, in commenting on the statute then before it, proceeded to say: " Unless, therefore, it can be maintained that the *exclusive* privilege granted by this charter to the corporation is beyond the power of the Legislature of Louisiana, there can be no just exception to the validity of the statute."

The dissenting justices in that case did not question the general power of the State over this subject, save in the single feature of the exclusiveness of the grant.

On the contrary, in a later case, Mr. Justice Field, who was the organ of the dissenting justices, said: " No one of the judges who then disagreed with the majority of the court denied that the States possessed the fullest power ever claimed by the most earnest advocate of their reserved rights to prescribe regulations affecting the health, the good order, the morals, the peace and the safety of society within their respective limits. * * * The act of Louisiana required that the slaughtering of cattle and the preparation of animal food for market should be done outside the limits of the city of New Orleans. It was competent to make this requirement, and furthermore to direct that the animals, before being slaughtered, should be inspected in order to determine whether they were in fit condition to be prepared for food. The dissenting judges in the

slaughter house cases found no fault with these provisions, but, on the contrary, approved of them.

"Had the act been limited to them, there would have been no dissent. But it went a great way beyond them. It created a corporation, and gave to it an *exclusive* right for twenty-five years to keep within an area of 1115 square miles, a place where, *alone*, animals intended for slaughter could be landed and sheltered, and where, *alone*, they could be slaughtered and their meat prepared for market." Butchers' Co. vs. Crescent City Co., 111 U. S. 754.

In the case just cited, the unanimous court held that the provision of Art. 258 of our present Constitution, repealing the "monopoly features" in the charter of this and of other corporations, was valid and effective, but shorn of these "monopoly features," no one questions that the charter remains otherwise in force, and secures the right of the company to continue its business at least until withdrawn by competent authority.

Inasmuch as the ordinances now under consideration contain no "monopoly features," it can not be doubted that they would be sustained by the Supreme Court of the United States.

"A monopoly," says Justice Field, "is defined to be an institution or allowance from the sovereign power of the State, by grant, commission or otherwise, to any person or corporation for the sole buying, selling, making, working or using of anything whereby any person or persons, bodies politic or corporate, are sought to be restrained of any freedom or liberty they had before, or hindered in their lawful trade."

No allowance of any such sole or exclusive right is contained in these ordinances. No person is restrained of any freedom or liberty they had before or is hindered in any lawful trade.

The most that can be said is that the ordinances do not expressly confer upon others than the defendants the present right to establish slaughter houses within the limits designated. *Non constat* that others wish to do so, or have applied and been refused, or will encounter any hindrance whatever in doing it. It will be time enough for us to pass upon such issues when they arise. Certainly these plaintiffs set up no infringement of their rights in this respect. The unrestricted privilege of establishing slaughter houses within the limits designated would not relieve, but aggravate, the injury complained of by them.

There is nothing, however, in the language of Art. 248 of the Constitution which supports the contention that the power delegated is confined to that affixing limits within which all persons shall be at liberty to establish slaughter houses on complying with the conditions prescribed. The article contains two affirmative delegations of power, viz.:

1. Exclusive power "to regulate the slaughtering of cattle and other live stock within their limits."

2. The power to pass "ordinances designating the places for slaughtering."

The second is a mere branch of the first general power and not exclusive in its terms.

Considering the importance of the police power over this subject and that the whole police power of the State over it is delegated to the city, we are bound to give it a liberal construction and to respect the discretion of the city in a matter so important to the health and well-being of the citizens, unless convinced, upon complaint of parties whose rights are infringed, that it operates the creation of a monopoly or exclusive privilege in violation of the Constitution.

No such consequence necessarily flows from the execution of these ordinances, and no parties are before us claiming infringement of their equal rights to pursue the business within the designated limits. See Cooley Const. Lim., 4 Ed., p 199.

## II.

The next ground is that the ordinance is not operative for want of the "concurrent approval of the Board of Health," as required by Constitution.

We have reproduced the resolutions of the Board of Health approving the ordinances, the genuineness of which is not disputed. But it appears that when the ordinances were first presented to the board, it adopted resolutions declining to approve them, which action was communicated to the City Council; and it is claimed that, after this, the board could not rescind its action and grant a valid approval.

The Constitution requires nothing but that the ordinances shall be passed by the council and shall be approved by the Board of Health. We have before us the ordinances duly passed and the approval of the Board of Health expressed in a formal resolution adopted by the

board. What more can we require? The Constitution fixes no time or mode in which the approval of the board shall be made.

The first disapproval by the board did not annul or cancel the ordinance. It simply remained ineffective for want of such approval. The council has never reconsidered or rescinded the ordinance. It still stands upon the city's records as an existing ordinance, and since we hear no complaint from the council as to the time or method of the board's action, we may presume that it persists in its action as expressed thereby. We can perceive no reason why the board's action in first disapproving should prevent it from afterward changing its mind, for reasons doubtless good, and approving it, so long, at least, as the council maintained the ordinance. The council could repeal the ordinance before or after approval by the board. Not having done so, the ordinance and the approval coexist and the constitutional requirement is satisfied. Nor can we listen to complaints of violation by the board of its own rules of parliamentary proceeding. We, and the public, are simply concerned with the fact and not with the method of the board's approval. The constitutional purpose was to protect the people against inconsiderate action by the council in establishing slaughter houses in localities where they might endanger the public health, and with that end in view, to require such ordinances first to receive the sanction of the authorities specially charged with the care of the public health, and so organized as to enable them to give an expert and scientific judgment on such matters. That purpose is fully accomplished in this case, in which the Board of Health has acted deliberately and unequivocally.

The argument of plaintiff's able counsel is based upon a false analogy which likens the action of the council and Board of Health to that of two concurrent legislative bodies such as the Senate and House of Representatives in the General Assembly.

The Board of Health is not vested with any proper legislative function in this case. It has no part in passing the ordinances, and no power to amend them. Its only function is to say whether they approve or disapprove them. The case is not dissimilar to one recently decided by us, where the statute required certain action in relation to tax assessments to be submitted to the City Council "for its approval or rejection." We then said: "The action here involved no function of law making. It was simply an expression of the will of the council, approving the report of the committee,

which was all the statute required. The action conclusively shows that the council approved the report. It is not a law in any sense; it is a simple decision by the council of a question required to be submitted to it under the statute, viz., ' shall the report of the committee be approved or rejected.' " Board vs. Thoman, 42 An. 609.

## III.

The final ground for injunction is that the slaughter house proposed to be erected will be a private nuisance, injurious to plaintiffs. We consider this ground entirely untenable.

The competent legislative authority under which defendants are proceeding is a complete protection against any restraint by injunction taken out in advance.

It would be a complete nullification of the police power granted to the city by the Constitution to authorize and fix the location of slaughter houses, if private persons might enjoin in advance the execution of ordinances for that purpose duly passed.

No authority is quoted sustaining relief by injunction in such a case. The general *dictum* quoted from various authorities to the effect that a party can always prevent by injunction the doing of an act which would give him a claim for damages obviously refers, and must be confined, to unlawful acts. The act here sought to be enjoined is a strictly lawful act, made so by the valid ordinance of the city passed in the exercise of power conferred by the Constitution itself.

In the performance of this lawful act it may be that damages will be inflicted on plaintiffs for which even the legislative authorization may not exempt defendants from compensatory liability.

We shall not now enter into any discussion of the kinds and degrees of injury which might sustain an action for damages. It is sufficient to say that plaintiffs' rights are necessarily limited to compensation for any actionable injury the execution of the law may inflict.

Mr. High lays down the principle as follows: "A public nuisance can not exist in acts which are warranted [by law or authorized by legislative sanction, even though the act complained of might, independent of the statute, be a nuisance. Nor will a charge in the bill of special and peculiar injury to the complainant avail, if the work sought to be restrained is authorized by special legislative enactment." High on Injunctions, Sec. 767.

646 SUPREME COURT OF LOUISIANA.

Darcantel et al vs. Slaughter House Co et als.

He cites numerous authorities sustaining the proposition, which need not be here reproduced.

The principles involved in the following decisions of this court sustain the same conclusion: Hottinger vs. New Orleans, 42 An. 629; Bell vs. Riggs, 38 An. 555; Werges vs. Railroad, 35 An. 641; Harrison vs. Railroad, 34 An. 462.

The injuries complained of are purely prospective, and the evidence in the case leaves it doubtful whether they will arise, or whether, at least, they have not been greatly exaggerated.

Judgment affirmed.

### CONCURRING OPINION ON APPLICATION FOR REHEARING.

WATKINS, J. As I understand plaintiffs' application, complaint is made of our opinion on the five following grounds, viz.:

1. That the point made on the original hearing is, that Art. 248 of the Constitution confers on the City Council "the power of *regulating* the slaughtering of cattle," etc., not the right of *establishing slaughter houses;* and, hence, the latter power "has remained latent in the State, and that the Legislature has not thought proper to delegate it to the municipality," etc.

2. That the City Council is not empowered either by its charter or the Constitution, "to grant a *franchise*," such as the one drawn in question under Ordinance 5180, C. S.

3. That, while not doubting that said ordinance does not grant the defendants a monopoly *upon its face,* yet it does it *in fact.*

4. That, while it is true that the ordinance protects the establishment of the proposed slaughter house from interference by injunction, on the score of its being a *public* nuisance, yet it can not afford like protection to the *acts* of private individuals operating under it, which, in themselves, constitute a *private* nuisance.

5. That the establishment of a slaughter house in the immediate vicinity of the plaintiffs' residences would compel their abandonment, and result in the virtual expropriation of their property without adequate compensation previously paid, in the sense of the State and Federal Constitutions.

### I AND II.

Our opinion fully disposed of the first two grounds of complaint, in affirming the correctness of our opinion in Villavaso vs. Barthet, to the effect "that the framers of the Constitution intended to vest

in the enumerated subdivisions of the State, within their respective limits, the *whole power* inherent to a sovereign, touching the regulation of the slaughtering of animals for food;" and that "the power thus delegated is as complete, unrestrained and unshackled as it originally existed in the State itself, and its exercise can be circumscribed by *no limits* or *conditions* which could not apply to the State or to the sovereign whence it arises."

And in the further statement made in comment upon that opinion "that the Constitution *confers upon the city of New Orleans the whole police power over this subject which belongs to the State herself,* and subject to no limitations, except those expressly imposed by the terms of the constitutional grant itself;" hence there seems to remain no room for doubt upon the subject.

If, indeed, the Constitution did confer upon the city *the whole police power* over the subject which belonged to the State, it is difficult to understand why the city is not possessed of power to *establish* slaughter houses, in the sense of the ordinance in question, as well as to regulate them or, for that matter, to grant a franchise such as it has conferred on the defendants.

Conceding the correctness of the principles announced to the contrary, as quoted by counsel from opinions of courts in other States, the organic laws whereof contain no similar delegation of police power to municipalities; and, also, the correctness of other quoted decisions of this court, on *other questions* not controlled by *any* constitutional grant—and yet, the correctness of our opinion stands unimpeached.

### III.

With reference to the objection that the ordinance grants the defendant a monopoly *in fact, though not on its face,* counsel's argument is not convincing to my mind.

His insistence is that not only does Ordinance No. 5180, C. S., confer a franchise on the defendants, but that it repealed all other ordinances upon the same subject matter, thus leaving the defendants practically without competition.

But counsel has failed to note that the ordinance contains a clause saving the rights of "any and all slaughter houses now operated in this city." And it is also worthy of observation that in an amendment to Ordinance 5180, C. S., there is a provision to the effect that it "shall not be construed as granting an exclusive privilege."

In construing the ordinance as amended, our opinion emphatically ·declares that " no monopolous or exclusive privilege is conferred by ·either the terms or any possible construction of the ordinance, nor does it contain any provision *restricting the business of slaughtering* to the land or houses of defendants. Nothing prevents the city from permitting the establishment of other slaughter houses, by other persons, either within the limits designated. or, for that matter, elsewhere."

To this, counsel opposes the argument that the proposed limits of the defendants' slaughter house comprise only three squares front ·on the Mississippi river, by· seven squares in depth; and the sugges-tion is made, that if other parties applied to the City Council for the *same* privilege, to be exercised on the *same* premises as that desig-nated for the defendants, it would be refused, and " hence the mo-nopoly of right;" but if granted it would be useless, " and hence a monopoly in fact."

But the exclusiveness of the grant, or regulation provided for in ·the ordinance, is not the one contemplated by the Constitution as constituting a monopoly.

The precepts of the Constitution are (1) that the "incorporated municipalities of this State shall alone have the power of regulating the slaughtering of cattle and other live stock *within their respective limits;*" (2) "no monopoly or exclusive privilege shall exist in the State;" (3) "· nor (shall) *such business* be restricted to the land or houses of any individual or corporation."

Clearly, the constitutional intendment is that there should not be granted to any person or corporation the exclusive right of slaughter-ing cattle *within the limits of the municipality;* nor should the conduct ·of such business " be restricted to the land or houses of any individual or corporation."

Hence, if the ·illustration furnished by counsel be accepted as true in point of fact, the ordinance under consideration would not be sub-ject to constitutional inhibition as granting a monopolous franchise.

## IV.

In determining the question of *private* nuisance *vel non*, less re-·liance must be placed upon the case stated on the plaintiffs' petition .than on that presented upon the face of the ordinance, and the con--current approval of the Board of Health, in so far as concerns their

Darcantel et al. vs. Slaughter House Co. et als.

*present* right to an injunction restraining the defendants from establishing a slaughter house.

As to what may be the ultimate effect of such establishment, as to the manner in which same may be *conducted*, on the rights of plaintiffs, is a totally different question.

Reference to the ordinance discloses that in contemplation thereof the slaughtering of animals was to be prosecuted under a new and scientific process, which would exempt the business from many of its most objectionable features, and the approval of the ordinance by the Board of Health was specially conditioned upon " their right of inspection of all plans for the construction of said slaughter house, and requiring same to embody and contain the most approved modern devices and appliances for maintaining, not only the sanitary conditions of health of animals before slaughter, but the preservation of meats between slaughter and sale, and also the prompt removal and disposition of blood and all other offal, and the perfect cleanliness of the live stock stalls," etc.

We feel bound to assume that the City Council and the Board of Health will see to it that these provisions of the ordinance of the one, and the resolution of the other, are faithfully carried out, but if they should not, and *private* nuisance result to the plaintiffs thereby, the right is fully reserved to them to claim and prove damages commensurate with the injury sustained.

## V.

The argument presented in the preceding paragraph is fully applicable to this one, and is necessarily predicated upon it.

Whether or not the defendants' slaughtering establishment will be so *conducted* as to compel the plaintiffs to abandon their property is a question for the future.

Established and operated, as is evidently contemplated by the ordinance of the City Council and the resolution of the Board of Health, there would be no room for such grave apprehension; and judgment can not be founded upon a simple *apprehension* of injury *to result in the future* from a plain violation of both the ordinance and the resolution.

Upon careful reflection and a thorough re-examination of the case I am of the deliberate conviction that our opinion is well grounded in law.