Stephen Alfred Morse v. Board of Medical Examiners for the State of Texas.

Decided October 13, 1909.

**1.—Practice of Medicine—Refusal of License.**

The section (11) of the Act of April 17, 1907, Laws 30th Leg., p. 227, authorizing the Board of Medical Examiners to refuse license or certificate verifying the former license to practice medicine where the applicant therefor has been guilty of "other grossly unprofessional or dishonorable conduct of a character likely to deceive or defraud the public" is not invalid for want of certainty.

**2.—Same—Validating Certificate—Penalty.**

The refusal of a certificate validating a former license of a medical practitioner under the Act of April 17, 1907, is a refusal to grant license, distinguishable from the forfeiture or revocation of an existing one by the Board, and not penal or retroactive.

**3.—Same—Remedy—Mandamus.**

In the opinion of Mr. Justice Key, the person seeking mandamus to require the Board to issue him a license to practice medicine must show himself entitled to such license by the terms of the law. If he claims that the law is invalid this would only avail him as a defense for violating it; it would not entitle him to a license in disregard of its terms.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*Baker & Thomas,* for appellant, cited: Czarra v. Board of Medical Supervisors of D. C., Washington Law Reporter, vol. 33, 470; Matthews v. Murphy, 54 L. R. A. (Ky.), 415, 63 S. W., 785, authorities cited; Hewitt v. Board of Medical Examiners of the State, 84 Pac. (Cal.), 39; Ex parte McNulty, 77 Cal., 164; State v. Gaster, 44 La. Ann., 636, 638; Ex parte Jackson, 45 Ark., 158, 164; Augustine v. State, 41 Texas Crim., 59, 76; Jones v. State, 100 Ala., 32, 34; State v. Partlow, 91 N. C., 550, 553; State v. Mann, 2 Or., 238; Louisville & N. R. R. v. Commonwealth, 99 Ky., 132; Magnetic Healing v. McAnnulty, 187 U. S., 94, 106; Railway v. Commonwealth, 35 S. W., 130; Meffert v. State Board of Med. Registration, 72 Pac. Rep., 247 (Kansas, 1903); State v. Board, etc., 34 Minn., 387; State Board, etc., v. Ray, 22 R. I., 538; People v. McCoy, 125 Ill., 289; State v. Kellogg, 14 Mont., 426.

*Scott, Sanford & Ross,* for appellees, cited: Whitfield v. Terrell Comp. Co., 26 Texas Civ. App., 235; State ex rel. Powell v. State Medical Board, 32 Minn., 324; State ex rel. Feller v. State Board

Medical Examiners, 26 N. W. (Minn.), 125; People v. McCoy, 125 Ill., 289, 17 N. E., 786; State v. Board, 32 Minn., 324, 20 N. W., 238; Meffert v. State, 66 Kans., 710, 72 Pac., 247; Hawker v. People, 170 U. S., 189; Augustine v. State, 41 Texas Crim., 59; Petterson v. Pilot Com'rs, 24 Texas Civ. App., 33; 26 Am. & Eng. Ency. Law (2d ed.), 657; Iowa Eclectic Medical Ass'n v. Schrader, 20 L. R. A., 355; Traer v. State Board Medical Examiners, 106 Iowa, 564; Van Vleck v. Board of Dental Examiners, 44 L. R. A., 635; State ex rel. Hygeia Med. Col. v. Coleman, 55 L. R. A., 105, 64 Ohio St., 377; Board v. People, 13 N. E., 201 (Ill.); State ex rel. Hathaway v. State Board, 15 S. W., 322; Macomber v. State Board Health, 8 L. R. A. (N. S.), 585; In re Smith, 10 Wend., 449; State Board v. Ray, 22 R. I., 538; State v. Kellogg, 14 Mon., 426; State v. Board, 34 Minn., 387.

KEY, ASSOCIATE JUSTICE.—Appellant, as relator, brought this suit against appellees, as respondents, whereby he sought a writ of mandamus to compel respondents to issue to him verification license to practice medicine. He alleged in his petition that he was legally licensed to practice medicine throughout the State of Texas on the 25th day of March, 1895; that he had presented such license to respondents, the State Board of Medical Examiners created under the Act of April 17, 1907, regulating the practice of medicine, and had in all other respects complied with the law, and that respondents had unlawfully refused to issue to him the verification license provided for in the Act referred to.

The answer of respondents, among other things, averred that relator had been guilty of grossly unprofessional or dishonorable conduct, of a character likely to deceive and defraud the public, setting forth in detail the conduct referred to, and assigned such conduct as their reason for refusing to issue to relator a verification license, and relied upon section 11 of the Act referred to to support such refusal.

By supplemental petition relator excepted to respondents' answer upon the ground that so much of the Act referred to as attempted to authorize respondents to refuse to allow a license to practice medicine on account of "other grossly unprofessional or dishonorable conduct of a character likely to deceive or defraud the public," is void for the want of certainty and is retroactive in its effect.

The trial court overruled relator's exceptions to respondents' answer and rendered judgment in favor of respondents, and relator has appealed, and presents the case in this court upon three assignments of error, all of which present substantially the same question, which is the validity of that portion of the statute which authorizes respondents to refuse a license on account of grossly unprofessional or dishonorable conduct, etc.

The Thirtieth Legislature enacted a law intended to cover the whole subject of the practice of medicine in this State. Section 1 provides for the creation of a Board of Medical Examiners for the State, the number and qualifications of its members; that the several schools of medicine shall be represented thereon, the manner of the appointment of the members, their term of office, etc.; section 2 provides for the organization and officers and meetings and internal gov-

ernment of the board; section 3 provides for the keeping of the records of the board; section 4 makes it unlawful for any person to practice medicine in the State except he first comply with the requirements of this Act; section 5 prescribes the manner and form of registration by the practitioner of his authority with the district clerk; under section 6 it is made necessary for all lawful practitioners of medicine in the State to apply to said board and obtain from it a license, and also provides for reciprocity with other States; sections 7-9 provide for the examination of applicants for licenses, who were not theretofore lawful practitioners; section 10 names certain classes that are exempt from the operation of this Act; section 11 makes provision for the denial by the board of licenses, naming the causes for which such .denial may be made; section 12 provides for the revocation of licenses by the courts; section 13 designates those who are subject to the provisions of this Act; section 14 prescribes the penalty for violation of the Act; section 15 specifies the time which will be allowed those who were theretofore lawful practitioners in which to obtain license; section 16 defines the meaning of certain terms used in the Act, and section 17 is the repealing clause. The section involved in this case reads as follows:

"Section 11. The State Board of Medical Examiners may refuse to admit persons to its examinations or to issue the certificate provided for in this Act for any of the following causes:

"First. The presentation to the board of any license, certificate or diploma which was illegally or fraudulently obtained, or when fraud or deception has been practiced in passing the examination.

"Second. Conviction of a crime of the grade of a felony or one which involves moral turpitude, or procuring or aiding or abetting the procuring of a criminal abortion.

"Third. Other grossly unprofessional or dishonorable conduct of a character likely to deceive or defraud the public; or for habits of intemperance or drug addiction calculated to endanger the lives of patients; provided that any applicant who may be refused admittance to examination before said board shall have his right of action to have such issue tried in the District Court of the county in which some member of the board shall reside."

Appellant assails the first clause of the third subdivision of this section, the contention being that it is too general and uncertain, and therefore should be disregarded and the statute administered as though that clause was eliminated therefrom, and several cases have been cited in support of that contention, and especially Czarra v. Board of Medical Supervisors, 33 Washington Law Rep., 470; Matthews v. Murphy, 54 L. R. A., 415, 63 S. W., 785; Hewett v. Board of Medical Examiners, 148 Cal., 590, 84 Pac., 39; School of Magnetic Healing v. McAnulty, 187 U. S., 94; Ex parte McNulty, 77 Cal., 164; Augustine v. State, 41 Texas Crim., 59 and 76; State v. Gaster, 44 La. Ann., 636.

In all these cases the proceedings complained of were for the purpose of canceling or revoking license to practice medicine, or were criminal prosecutions for alleged violation of penal statutes, while in this case appellant is not charged with violating any penal law, and it is not contended that appellees have attempted to cancel or revoke ap-

pellant's pre-existing license to practice medicine. An important dis‑ tinction exists between granting a license and revoking a license, which distinction may justify the application of different rules of law. Many courts hold that the cancellation or revocation of a license to practice medicine constitutes a penalty, but such result does not follow from a refusal to grant such license. A license to practice medicine is a privi‑ lege or franchise granted by the government, and a refusal to grant such franchise, whatever the reason may be for such refusal, does not constitute a penalty. Furthermore, none of the statutes under con‑ sideration in the cases relied on by appellant are entirely analogous to the statute here involved. In the Czarra case the statute authorized the board to refuse to grant and to revoke a license where the party was guilty "of unprofessional or dishonorable conduct," and that was an appeal from the action of the medical board revoking a license. The particular clause of the statute assailed in this case not only re‑ quires proof of unprofessional or dishonorable conduct, but it must be *other grossly* unprofessional or dishonorable conduct *of a character likely to deceive or defraud the public*. It is not unreasonable to con‑ clude that, by the use of the word "other," the Legislature intended that the conduct referred to should be similar in its nature to that designated in the preceding subdivision of that section and defined as "a crime of the grade of a felony, or one which involves moral turpi‑ tude, or procuring or aiding or abetting the procuring of a criminal abortion." Not only that, but such conduct is further qualified by the use of the word "grossly." Furthermore, such conduct must not only be *grossly* unprofessional or dishonorable, but it must be *of a charac‑ ter likely to deceive or defraud the public*.

In none of the cases referred to have we found a statute as specific as ours, which restricts the condemned conduct to a certain specified class or kind, about which there can be much less room for disagree‑ ment among fair and just minds. It has been held in construing a similar statute that the language "unprofessional or dishonorable" was not intended to describe two classes of conduct, and that the word "un‑ professional" was used in the same sense as "dishonorable," and not as signifying "unethical." (State v. State Medical Examining Board, 32 Minn., 324, 50 Am. Rep., 575.)

We have reached the conclusion that the statute is not subject to the objection urged against it. Nearly, if not all the States have stat‑ utes requiring applicants for license to practice either medicine or law to present satisfactory evidence of good moral character; and no case has been cited, and we know of none, in which it has ever been held that such a statute was invalid because of uncertainty. It would seem that statutes of the latter class afford as much room for difference of opinion as does the statute under consideration in this case.

While we have pointed out the fact that this case does not involve the revocation of a license or the imposition of any other penalty, we are not to be understood as holding that it would be invalid if the case was of the latter class and involved the question of penalty. Our federal anti-trust statute prescribes a penalty against every person en‑ tering into a contract or conspiracy "in restraint of trade or com‑ merce among the several states or with foreign nations;" our State

anti-trust statute makes it an offense, punishable by heavy penalty, to enter into a contract or conspiracy "to create or which may tend to create or carry out restrictions in trade or commerce or aids to commerce," and both of these statutes have been unsuccessfully assailed upon the ground that they were too uncertain and indefinite. (Waters-Pierce Oil Co. v. State, 106 S. W., 925, and cases there cited.) In fact, unless it be permissible to use language as general as that involved in the statute under consideration, legislation in many instances could not be so framed as to accomplish all that was desired and afford full protection to the public, because of the impossibility of enumerating in detail every separate and distinct act intended to be prohibited.

In conclusion, the writer, speaking for himself only, deems it proper to add that he is strongly inclined to believe that, if appellant's contention be correct as to the construction to be placed upon the statute, nevertheless, he has mistaken his remedy, and should not prevail in this action. He has brought an action for a writ of mandamus, alleging that under one section of the statute referred to he is entitled to have the board grant to him a verification license. In reply the board answers that, by force of another section of the same statute invoked by appellant, the board had the power to refuse to grant such license for reasons specified in that section. Has appellant the right to invoke one section of the statute by which to compel appellees to do something which another section authorized them ·to refuse to do? In other words, can he, by affirmative action and in a suit brought by him, split the statute in two, and assert that part of it is valid and the other part invalid, and obtain affirmative relief founded upon such contention? On the contrary, it seems to me that his remedy would be to stand upon the defensive, and when his right to practice medicine under his pre-existing license is challenged by any legal proceeding instituted for that purpose, to assert that his former license is not affected by the statute under consideration, because of the objections urged against it in this case.

No error has been shown and the judgment is affirmed.

*Affirmed.*

Writ of error refused.