# Texas State Board of Medical Examiners v. Orlando S. Koepsel.

No. A-7006. Decided March 25, 1959.
Rehearing overruled April 22, 1959.
(322 S.W. 2d Series 609)

*Will Wilson*, Attorney General, *W. V. Geppert* and *John* Reeves, Assistants Attorney General, and *Sam L. Jones*, District Attorney, Corpus Christi, for petitioner.

*Lewright, Dyer* and *Redford* and *Dean B. Kirkham*, all of Corpus Christi, for respondent.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

The State Board of Medical Examiners, after notice and a hearing, cancelled the license of Dr. Koepsel to practice medicine in Texas. It found him guilty of grossly unprofessional and dishonorable conduct of a character likely to deceive or defraud the public. He brought this suit to set aside the Board's order.

Largely because of its construction of the statutes involved, the trial court was of the opinion that there was no evidence to support the Board's order and that no issue of fact was raised for the jury. It granted Dr. Koepsel's motion for summary judgment, vacated the Board's order, and restored his license. By a divided court, the Court of Civil Appeals affirmed the judgment. 315 S.W. 2d 652. We think an issue of fact was raised, and here reverse the judgments of the courts below and remand the cause for a trial on its merits.[1]

Since the trial court has sustained the doctor's motion for summary judgment thus obviating a trial before a jury, we must, for the purposes of this appeal, accept as true the testimony offered against the doctor. All of the evidence before the court, and all reasonable inferences to be derived therefrom, must be resolved against him.

The statutes set out several grounds for cancellation of a license. Among them is Section 4 of Article 4505:

"Grossly unprofessional or dishonorable conduct of a character which in the opinion of the Board is likely to deceive or defraud the public."[2]

---

1.—This opinion is not to be construed as holding that the doctor has been adjudged by the court to be guilty of anything. The question before the court is *not* whether he was guilty of the misconduct charged against him but is whether the question should have been submitted to the jury. We hold that it should have been.

2.—See also Article 4506, Vernon's Ann. Civ. Stats.

For purposes of this opinion, Section 4 has three elements:

(1)   Grossly unprofessional or dishonorable conduct

(2)   of a character likely to deceive or defraud

(3)   the public.

■  For purposes of this appeal, it is conceded that, assuming the truthfulness of the witnesses against the doctor, an issue was raised as to item one, grossly unprofessional or dishonorable conduct. As to the third item, the patients of a doctor are unquestionably members of "the public" within the meaning of the Act.

The case therefore turns on the second element, i.e., whether the grossly unprofessional conduct was of a character which was likely to deceive or defraud.

The courts below were of the opinion that the doctor's alleged conduct, however reprehensible, was not, as a matter of law, of a character which was likely to *deceive or defraud* the public within the meaning of the Act.

The sworn testimony taken before the Board and depositions were offered before the court on the motion for summary judgment. It is unnecessary and would not be in good taste to set out the details of the shocking testimony in the record. It is sufficient to say that the testimony of seven women[3] was, in substance, that the doctor treated them individually for backache, nervousness or headaches by massaging their bare backs. He had them disrobe, or partially disrobe, and lie on a table. No nurse or other attendant was present. He would turn out the light. Using a small flashlight-like device he sought the points of muscle spasm. He then massaged the patient's back with his hands. In so doing he would pull the patient toward himself.

The testimony of each of the witnesses was that the doctor became sexually aroused and that he pushed his penis into their face, neck, thighs or other external parts. Some testified that as to them there was a bare exposure and contact. Others testified that they definitely felt it through his trousers.

---

3.—In the charges filed against the doctor by the Board, five women were named and their testimony was offered. In addition, the testimony of two other women was offered before the Board and the Court for purposes of corroboration.

The witnesses testified that they went to the doctor with the utmost confidence and put themselves and their health into his charge. They had expected no such treatment. They were surprise, shocked, embarrassed, and incensed. Some expressed a feeling of great fear.

The doctor admitted that he had been called before the local Board of Censors back in 1950 upon a complaint of a similar nature. No written reprimand was given him, but he was given at least some type of warning. He admitted that the committee had advised him, among other things, that he should have an attendant in the room most of the time. He did not heed the suggestion or warning of the local committee.

The doctor denied any improper action toward any of the women. On his behalf, several women testified to having received similar medical treatment from him and that he acted toward them at all times as a perfect gentleman. His nurses and secretaries testified favorably for him. They, and other character witnesses, staunchly defended the doctor, his character, and his integrity. They did, however, say that the doctor treated his partially disrobed patients in a darkened room without any attendant being present. The nurses testified, however, that they came and went as needed. Some said they always knocked before entering.

The Board conceded that the doctor's back treatments themselves were within the realm of good judgment. They were agreed as to the efficiency of his back treatments. Its complaint, and that of the complaining witnesses, was as to his other actions while massaging his patients.

■ The able counsel for the doctor contends, and the majority of the Court of Civil Appeals held, that Section 4 of the statute has reference only to deceitful or fraudulent medical procedures and does not pertain to improper conduct during the course of an otherwise proper medical treatment. The Board contends, and we hold, that Section 4 is not so restricted in its meaning but includes a doctor's grossly unprofessional or dishonorable conduct practiced under the cloak of a medical treatment.

■ It is well recognized that in the professions dealing with human ills and their treatment, it is the policy of the people, expressed in legislative enactments, to require those who practice such profession to conform to the highest moral standards. The community is concerned with the maintenance of profes-

sional standards which will insure not only competency in individual practitioners but protection against those who would prey upon those particularly susceptible to imposition. It was not the intention of the legislature to clothe a man with a certificate of professional skill in order to license him to perform indecent acts either in his office or in the homes of his patients without there being any professional discipline.

■ The statute authorizes the revocation of a license for unprofessional or dishonorable conduct which in the opinion of the Board is *likely* to deceive or defraud the public. Among other definitions of "deceive" are "to impose upon; to deal treacherously with * * *." To be deceived is "to have mistaken confidence in." Webster's New International Dictionary, 2nd edition (1953), unabridged.

The women whose testimony was offered against Dr. Koepsel said they went to him in perfect good faith and placed themselves in his hands; and they were shocked, embarrassed, frightened, and outraged at his behavior. To say the least, they had mistaken confidence in him, were imposed upon, and were dealt with treacherously. They went to the doctor for medical treatment, believing they would receive only medical treatment. They were deceived.

This construction of the Act is inconsistent with the history of the Medical Practice Act in Texas, particularly in view of the Act's amendment after the decisions of the Courts of Civil Appeals in the *Morse* and *Berry* cases, discussed below, upon which the doctor relies here.

Under the Act of 1907, the courts (not the Board) were authorized to revoke a medical license upon proof of violation of the law or for any cause for which the Board might refuse to admit any person to examination. The Board was authorized to refuse to admit persons to examinations for the following three reasons:

1. The presentation of any illegal or fraudulent license or certificate, or for fraud in taking the examination.

2. Conviction of a felony, or a crime involving moral turpitude; or procuring, aiding, or abetting the procurement of a criminal abortion.

"3. *Other* grossly unprofessional or dishonorable conduct of a character likely to deceive or defraud the public * * *."[4]

The 1907 statute was attacked in two cases. In *Morse v. State Board of Medical Examiners*, 1909, Texas Civ. App., 122 S.W. 446, writ refused, Morse already had a license. But under the 1907 Act, he was required to get a "verification license" from the Board. The Board refused to issue one to him because he had been guilty of "unprofessional or dishonorable conduct of a character likely to deceive or defraud the public." An examination of the application for writ of error shows that Morse was accused of fraudulent advertising.[5] The only assignment in the application was that the statute was too vague and indefinite. It was held that it was not and that the Act was constitutional.

In upholding the Act, the Court of Civil Appeals in the *Morse* case observed that the unprofessional or dishonorable conduct must be more than merely unethical; it must affect the public. It further observed that since the *"other* unprofessional conduct" followed the section in the statute on the commission of a crime, it was not unreasonable to conclude that the "other unprofessional conduct" included conduct in the nature of a felony or a crime involving moral turpitude.

Similarly, in *Berry v. State,* 1911, Texas Civ. App., 135 S.W. 631, writ refused, the doctor whose license had been revoked contended that the term "unprofessional" was too indefinite and that the trial court should have further defined "grossly unprofessional or dishonorable conduct." The action of the trial court cancelling the doctor's license was upheld.

In upholding the statute, the Court of Civil Appeals observed that the "unprofessional or dishonorable conduct of a character likely to deceive the public," [under the 1907 statute] "is similar and closely akin to swindling." That opinion also said that the words "of a character likely to deceive or defraud the the public" were intended to differentiate acts which were merely unethical as between doctors and conduct which affects the public. It concluded, however:

---

4.—Acts 1907, 30th Legislature, S. B. 26, Ch. 123, Sections 11 and 12. These sections became Articles 4505 and 4506 in the statutory revision of 1925. Emphasis in this opinion is added.

5.—The doctor advertised that if people would take his "Dr. Morse's Vaporizing Inhaler," they would "wear the crown of health;" that it would cure headaches, colds, catarrhal deafness, consumption except in the last stages, weak eyes, et cetera.

"But when the unprofessional conduct * * * is of such a character as to deceive or defraud the public, then the law denounces such conduct and strips the offender of the means which made it possible to impose upon the credulous and unwary."

The facts before the Court in the *Berry* case *were* akin to swindling. The doctor represented that he was skilled in the cure of gallstones. His treatment was to have the patient swallow olive oil. The patient passed some little green balls which the doctor diagnosed as removed gallstones, and charged the patient $49.00. They were not gallstones, but were "soap balls" caused by the olive oil and the acid in the patient's stomach.

The doctor here relies heavily upon the statements in the *Morse* and *Berry* cases that the unprofessional conduct, to be grounds for revocation, is that conduct which is akin to swindling or the commission of a crime. From this it is argued that acts which are not akin to swindling or the commission of a crime are not such unprofessional conduct as will justify the revocation of a license.

■ The "refusal" of the applications for writs of error by this Court in the *Morse* case in 1909 and the *Berry* case in 1911 did not, as today, necessarily have the effect of approving the opinion of reasoning of the Courts of Civil Appeals.[6] The result reached in both cases was correct. But even if the statute had not been amended as it was, the statement in the *Morse case* that "unprofessional or dishonorable conduct" was intended by the Legislature to be akin to a felony or a crime involving moral turpitude, and the statement in the *Berry* case that it was akin to swindling are not binding on this Court. The conduct in the *Berry* case was akin to swindling. But "grossly unprofessional and dishonorable conduct" is broader than swindling. No such limitation is imposed by the legislation.

In any event, the statute, as pertinent here, was amended in 1939 in at least two important respects.[7] First, the offenses

---

6.—*City of San Angelo v. Deutsch*, 126 Texas 532, 91 S.W. 2d 308 (1936), noted 15 Texas Law Rev. 124: "Before * * * 1927, the weight of authority was that the refusal of the writ ordinarily amounts to a decision that the result reached was a correct one, but not necessarily an approval of the reasoning or opinion of the Court of Civil Appeals."

7.—Acts 46th Leg., 1939, Ch. 3, p. 352. The Act was further amended in 1953 to authorize the Board, rather than the Court, to revoke a license, subject to judicial review. The Board was also authorized to promulgate rules to regulate the practice of medicine and the enforcement of the Act. Acts 53rd Leg., Ch. 426, p. 1029. But no such rules are before the Court here.

for which a license could be revoked were enlarged from three to thirteen. The use of deceiving or misleading advertising was made a new ground, separate and apart from "grossly unprofessional and dishonorable conduct." While charges of misleading advertising in the *Morse* and *Berry* cases were brought under "unprofessional and dishonorable conduct" under the 1907 statute, the Legislature must have intended for the latter to include much more. Hence it created a separate category for misleading advertising and left unprofessional and dishonorable conduct as a separate broad category.

Under the 1939 amendments, the grounds for refusal to admit a person to examination and to revoke a license included:

(2)  Conviction of a felony or a crime involving moral turpitude or criminal abortion.

(3)  Habits of intemperance, or drug addiction calculated in the opinion of the Board, to endanger lives of patients.

(4)  Grossly unprofessional or dishonorable conduct of a character which in the opinion of the Board is likely to deceive or defraud the public * * *.

(6)  The use of any advertising statement of a character tending to mislead or deceive the public.

(7)  Advertising professional superiority * * *.

The second change made which is significant here is that the word "other" before "grossly unprofessional or dishonorable conduct" was dropped. Thus the tie between the commission of a crime and "other grossly unprofessional conduct" which was suggested in the 1907 Act and mentioned in the *Morse* case was severed by the Legislature.

Both counsel for the doctor and the Board cite *Jacobi v. Texas State Board of Medical Examiners*, 308 S.W. 2d 261 (1958, Texas Civ. App., writ refused, n.r.e.). The point before us now was not raised in the application for writ of error in that case. Neither is the point directly passed upon in the opinion of the Court of Civil Appeals in the *Jacobi case*. It is discussed in passing upon alleged errors in excluding proffered testimony. In any event, the result of the *Jacobi* case was to uphold the revocation of a medical license where the jury found that grossly unprofessional and dishonorable conduct occurred while the

doctor was examining or treating, or at least purporting to treat, female patients. To that extent at least, that holding is in harmony with the holding here.

■ Here the doctor is accused of grossly unprofessional and dishonorable conduct while giving an otherwise professionally permissible treatment, a back massage. There is evidence to support such accusations. It was therefore error to enter the summary judgment for the doctor.

Counterpoint III in the brief of the doctor is that the trial court correctly entered a summary judgment for him because the jurisdiction of the Board was fraudulently obtained. The point is made that the written charges filed against him were not filed and sworn to by the women themselves but by the medical examiners who investigated the case and interviewed them.

Article 4506 is very broad in this regard. It states:

"Proceedings under this Article shall be begun by filing charges with the Texas State Board of Medical Examiners in writing and under oath. Said charges may be made by any person or persons."

We hold that the filing of the charges under oath by the examiner is permissible under the statute. The Act says that the charges "may be made by *any* person or persons." That would include the investigator. *Houtchens v. State*, 63 S.W. 2d 1011 (Texas Com. App., 1933).

The judgments below entering and affirming the summary judgment for the doctor are reversed and the cause is remanded to the district court for a trial on the merits.

Opinion delivered March 25, 1959.

Associate Justice Hamilton not sitting.