Rudolph E. JACOBI, Appellant,

v.

**TEXAS STATE BOARD OF MEDICAL EXAMINERS, Appellee.**

No. 3488.

Court of Civil Appeals of Texas.

Waco.

Nov. 27, 1957.

Rehearing Denied Jan. 2, 1958.

Maurice M. Davis, Fort Worth, Dixie, Ryan & Schulman, Houston, for appellant.

Will Wilson, Atty. Gen., John Reeves, C. K. Richards, Asst. Attys. Gen., Joe Resweber, County Atty., Tom P. Smith, Asst. County Atty., Houston, for appellee.

HALE, Justice.

This is an appeal from a judgment of the court below cancelling the license of appellant, Dr. Rudolph E. Jacobi, to practice medicine in the State of Texas. The proceeding grew out of the professional relationship of appellant to eight of his women patients, hereafter referred to as the complaining witnesses. Appellee, The Texas State Board of Medical Examiners, after hearing, entered its order cancelling the license of appellant. Thereafter, when the proceeding was removed to the court for a trial de novo, appellee set up in its pleading as Count 1 thereof, the following complaint: "On or about March 24, 1956, Rudolph E. Jacobi received in his office at 4717 Telephone Road as a patient Mrs. Alice Kotzebue and, while pretending to examine and/or treat her, did manipulate his hands and fingers in and around her genital organs; all of which manipulation was of no value, either medically or otherwise, to the said Mrs. Alice Kotzebue, and all of which manipulation was unprofessional and dishonorable conduct of a character likely to deceive and/or defraud the public, and did in fact deceive and defraud the said Mrs. Alice Kotzebue." In addition to Count 1 of its petition, appellee also set up seven additional counts, each being on behalf of one of the seven additional complaining witnesses, and each being in substantially the same language as that contained in Count 1 relating to Mrs. Kotzebue.

The case was tried before a jury. Upon the conclusion of the evidence, the court submitted 24 special issues to the jury, three of such issues relating to each of the eight complaining witnesses. The first three issues in the court's charge were as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that upon the occasion in question, when Rudolph E. Jacobi was examining Mrs. Alice Kotzebue on or about the 24th day of March, 1956, he manipulated his hands and fingers in and around her genital organs in such manner that such treatment was of no value to the said patient either medically or to her health?

"Answer 'We do' or 'We do not'.

"If you have answered Special Issue No. 1 'We do', and only in that event, then answer:

"Special Issue No. 2

"Do you find from a preponderance of the evidence that upon the occasion inquired about in the next preceding special issue, Rudolph E. Jacobi manipulated his hands and fingers in the manner inquired about for the purpose of deceiving and defrauding the said patient by thus inducing her to believe that such manipulation of his hands and fingers was beneficial to her either medically or to her health?

"Answer 'We do' or 'We do not'.

"If you have answered Special Issue No. 2 'We do', and only in that event, then answer:

"Special Issue No. 3

"Do you find from a preponderance of the evidence that such conduct on the part of Rudolph E. Jacobi, upon the occasion inquired about in the next two preceding special issues was of a character likely to deceive or defraud the public by inducing the belief that the professional services being performed by him were beneficial, either medically or to health, when in truth and in fact, they were not, and were known by him not to be beneficial?.

"Answer 'We do' or 'We do not'."

Following the foregoing issues numbered 1 to 3 inclusive, the court's charge contained 21 additional issues which related to the seven additional complaining witnesses, such issues being divided into seven groups of three issues each, these additional seven groups of special issues being submitted in substantially the same language as that employed in Special Issues Nos. 1, 2 and 3 relating to Mrs. Kotzebue. The jury answered all the 24 issues submitted to them "We do" and thereupon the trial court rendered the judgment appealed from, cancelling appellant's license to practice medicine.

 The first point in appellant's brief relates to the alleged error of the court in overruling his motion for new trial on account of newly discovered evidence. The sole basis for appellant's claim of newly discovered evidence is predicated upon the following affidavit of his attorney attached to his motion for new trial:

"On January 9, 1957, I talked to Mrs. J. Musselwhite, who informed me that during the summer of 1955 Mrs. Orvilla Johns called upon her to talk about Dr. Rudolph E. Jacobi, who was the physician for Mrs. Musselwhite and who had been the physician for Mrs. Johns, and on that occasion Mrs. Johns told her that she and the other girls had gotten together prior to August 20, 1956 and they were going to see to it that Dr. Jacobi did not practice medicine in Houston; that he was a woman-chaser whose wife was about to divorce him, that he had been run out of Wichita Falls for molesting women, and that he had better not practice medicine any more.

"On the same date, January 9, 1957, affiant talked to one Saibara, who stated that about two weeks ago Mrs. Orvilla Johns talked to him about Dr. Jacobi and said that one of these days she was going to get even with him, and from this conversation with Mrs. Johns the said Saibara got the impression that Mrs. Johns was one who did

a good deal of complaining, and was disgruntled over charges for services that Dr. Jacobi had made for treatment of her and her family."

We think the law is well established that in order to require the granting of a new trial on the ground of newly discovered evidence, the following indispensable elements must be present, viz.: (1) admissible, competent evidence must be introduced on the hearing of the motion for new trial showing the existence of the newly discovered evidence relied upon, (2) the party seeking a new trial must show that he had no notice of the existence of such evidence prior to the time of trial, (3) that due diligence had been used to procure the evidence prior to trial, (4) that the evidence is not merely cumulative to that already given and does not tend only to impeach the testimony of the adversary, and (5) the evidence would probably produce a different result if a new trial were granted. Hayman v. Dowda, Tex.Civ. App., 233 S.W.2d 466; Texas Employers Ins. Ass'n v. Moser, Tex.Civ.App., 152 S.W.2d 390; Employees Lloyds v. Schott, Tex.Civ.App., 183 S.W.2d 262 (er. ref.); Snow v. Harding, Tex.Civ.App., 180 S.W. 2d 965 (er. ref. w. o. m.); Gowan v. Reimers, Tex.Civ.App., 220 S.W.2d 331 (er. ref. n. r. e.); Vance v. Batterton, Tex. Civ.App., 187 S.W.2d 247 (er. ref. w. o. m.). We do not find any of the foregoing indispensable elements present in the case here under consideration.

In the case of Texas Employers Ins. Ass'n v. Evers, Tex.Civ.App., 242 S.W.2d 906, 912 (er. ref. n. r. e.) the court said:

"It has been many times held that a party seeking a new trial on the grounds of newly discovered evidence must, among other requirements, show that the alleged newly discovered evidence is not cumulative; that it is so material that it would probably produce a different result if a new trial were granted and that the complaining party exercised proper diligence

in determining the issue raised, if it were then known, at the original trial. These matters are then left to the sound discretion of the trial court, whose action in the matter will not be disturbed on appeal unless it is shown that the trial court abused its discretion."

The record before us in the case under consideration does not show that any testimony was offered on the hearing of the motion for new trial concerning any newly discovered evidence. The affidavit of the attorney for appellant as to his conversation with Mrs. Musselwhite and one Saibara was hearsay, and for that reason would not have been admissible or competent even though the attorney had offered to testify to the truth of his statements contained in the affidavit. Furthermore, it appears from the record before us that appellant must have had notice of prejudicial statements claimed to have been made by Mrs. Johns to Mrs. Musselwhite at the time of the trial, because counsel for appellant elicited from Mrs. Johns, one of the complaining witnesses, on cross examination that she had not had any conversation whatsoever with Mrs. J. Musselwhite. Moreover, we do not think the so-called newly discovered evidence, even though it had been admitted on the present trial, would have resulted in a different verdict of the jury in this case. Consequently, appellant's first point of error is overruled.

■ Under the second point in appellant's brief he complains of the action of the trial court in ruling on the admissibility of certain evidence which he attempted to elicit before the jury from Mrs. Helen Brimmer and eight other women patients, hereafter referred to as supporting witnesses. For the purposes of perfecting his bill of exception, counsel for appellant was permitted to elicit from Mrs. Brimmer in the absence of the jury the fact that she had received from appellant one or more treatments which he designated as pelvic massage; that such treatment was

carried out in a professional manner; and that there was no effort during the course of the treatment to excite the witness sexually and the treatment did not have that effect. It was agreed that the other supporting witnesses on behalf of appellant would testify to substantially the same facts as set forth in the bill of exception relating to the proffered testimony of Mrs. Brimmer. Each of the supporting witnesses was permitted to testify, along with other lay witnesses, as to the good reputation of appellant, but they were not permitted to testify that appellant made no effort to excite them sexually while administering a pelvic massage, or that such treatment did not have that effect.

We do not think the ruling of the court on the admissibility of the evidence complained of constituted reversible error. Appellant was not charged with merely administering a pelvic massage to any of the complaining witnesses and he was not charged with administering any unprofessional treatment to any of the supporting witnesses. The charge in each of the eight counts was that appellant "did manipulate his hands and fingers in and around her genital organs", which was of no value and was of such unprofessional and dishonorable conduct as to deceive and defraud each of the complaining witnesses. Each of the complaining witnesses against appellant testified fully and in detail as to the nature, extent and effect of the objectionable conduct of appellant during the course of his so-called treatment of them. They did not testify that he merely administered a pelvic massage to them, as the supporting witnesses offered to testify, but they testified that appellant massaged the clitoris in such manner as to excite them sexually. It was shown by the evidence that the clitoris is the chief genital organ of a woman. We agree with the able trial judge that the proffered testimony of the supporting witnesses which was excluded was not material to any disputed issue in this case.

■ ■ Appellant next complains of the testimony of Dr. Crain, a psychiatrist who testified on behalf of appellee. After qualifying himself as a medical expert witness in the field of psychiatry, he testified in effect that a person who would do the things which the evidence of the complaining witnesses showed appellant had done was, in the opinion of the witness, a sex pervert or deviate.

"Q. Assuming there is such a person, in your opinion, would that person suffer from some mental or nervous or personality defect? A. Yes.

"Q. Would you describe, sir, what that defect would be? A. It is a character disorder, personality disorder, and it is called sexual perversion or sexual deviation. These people receive pleasure of a sexual nature in ways that other people do not. * * *

"Q. Doctor, is this condition one that is easy or hard to cure? A. It is almost impossible to obtain a cure. In fact, I have never heard of a cure. Under stress, under some driving need to refrain, they will refrain for periods, but inevitably they repeat their misdeeds."

Appellant says in his brief that "the astounding testimony of Dr. Crain was entirely incompetent and irrelevant to any of the material issues in this case. He was permitted to roam at will in the field of surmise, speculation and suspicion and to drive a spike through the heart of a man he had never met until he saw him in court. * * *" We do not think any reversible error is shown in relation to the testimony of Dr. Crain. No objection was made to any of the questions propounded to him as a witness or to the answers which he gave to the questions. As a matter of fact, a considerable part of the testimony of which appellant's present counsel now complains was actually elicited by the able attorney who represented appellant in the trial of the case. Moreover, it is proper for an expert medical witness to give opinion evidence based solely upon hypothetical questions as was done in this case. Shuffield v. Taylor, 125 Tex. 601, 83 S.W.2d 955;

McCormick and Ray, 2 Texas Law of Evidence, (1956 Edition) Sec. 1403, pp. 238–242.

The last four points in the brief of appellant are grouped and presented together. They relate to alleged misconduct on the part of counsel for appellee in propounding certain questions to two witnesses and in improper argument to the jury.

 During the cross-examination of appellant the following question was asked him: "All five of those women (referring to five of the complaining witnesses) stated that you didn't explain what you were doing to them. Were they wrong?" The court overruled the following objection to such question: "Your Honor, I am going to object to arguing with the witness on the basis of any examination." During the examination of one of the complaining witnesses, counsel for appellee propounded the following question to her: "Q. Well, would you describe the movement of the doctor's hands during this quote examination unquote?" To the question thus propounded, counsel for appellant objected in the following language: "Your Honor, I am going to object to this ex-parte remarks on the part of counsel and ask the jury to disregard them as being side-bar remarks." The court sustained the foregoing objection and instructed the jury to disregard the remarks. We do not think any reversible error is shown in connection with either of the foregoing questions.

In his motion for new trial, appellant set up two grounds of misconduct on the part of counsel in his closing argument to the jury, as follows:

"The misconduct of counsel for plaintiff, Texas State Board of Medical Examiners, Mr. Tom P. Smith, in his closing argument, at a time when defendant had no opportunity to answer him, in alluding to why the women in question did not run down to the Police Station and in arguing to the jury there was no telling how many times the defendant had been guilty of dis-

honorable conduct when no one knew about it, such misconduct of counsel being highly improper, inflammatory, prejudicial and beyond the record of such a nature as not to be curable by an instruction from the court; all to defendant's prejudice.

"The misconduct of counsel for plaintiff, Texas State Board of Medical Examiners, Mr. Tom P. Smith, in his closing argument to the jury, at a time when defendant had no opportunity to answer him in this, in that he informed the jury the effect of their answers to the special issues submitted, in order to convict the defendant of the charges embraced in such special issues, and in effect thereby telling the jury that they should answer all of the issues in the affirmative, and thereby revoke the license of the defendant to practice medicine, and at the same time, in telling the jury how he, counsel for plaintiff, would answer such issues; all to the prejudice of defendant."

 During the course of his closing argument to the jury, counsel for appellee stated his opinion as to why the complaining witnesses did not "run down to the Police Station" and that there was no way of telling how many times appellant had been guilty of dishonorable conduct which no one knew about. No objection was interposed to the foregoing arguments at the time when the same were made to the jury. Assuming, without deciding, that such arguments were improper, we do not consider them, or either of them, to be so imflammatory or prejudicial in nature that a proper instruction from the court would not cure the prejudicial effect, if any, of the arguments so made.

 In his closing remarks to the jury, counsel for appellee stated in effect how he would answer the issues submitted in the court's charge in such manner as to warrant a suspension of appellant's license. In the course of his remarks he said:

"I submit to you—and then I won't take up any more of your time—that each and every one of these cases of these eight women are cases where the license should be suspended. I ask you to answer—

"Mr. Ryan: Your Honor, I am now going to object to the statement made by counsel for the reason that it is in violation of the rules requiring counsel not to indicate to the jury the effect of their answers, and for that reason I object to it."

The court sustained the objection and instructed the jury not to consider the argument, and thereupon the counsel for appellant stated that he nevertheless excepted, "even after the instructions, Your Honor." Thereupon, the court stated: "Well, the jury will be guided by the court's charge, rather than the comments of either counsel along this line. I have charged you fully in that regard, especially on the first sheet in the charge. All right. Go ahead." Thereafter, counsel for appellee stated to the jury as follows: "I think the evidence in this case indicates àn answer of 'We do,' to Special Issue No. 1. I think the evidence in this case indicates an answer of 'We do' to Special Issue No. 2. I think the evidence in this case indicates an answer to Special Issue No. 3 of 'We do.'"

■ The jurors necessarily knew that appellant was not a fit person to practice medicine if the testimony of the complaining witnesses, as submitted in the 24 special issues in the court's charge, were true. It is ordinarily not deemed reversible error for counsel to inform the jury of facts which they already know. McFaddin v. Hebert, 118 Tex. 314, 15 S.W.2d 213. Furthermore, the trial court instructed the jury most emphatically that they were not to consider the legal effect which their answers might have upon the rights to either party to this suit. Burtis v. Butler Bros., Tex.Civ.App., 243 S.W.2d 235. Consequently, we cannot say the arguments complained of constituted reversible error.

■ In his brief, appellant complains of other portions of the closing arguments of counsel for appellee to the jury which were not covered in the appellant's motion for new trial. The most serious question raised in connection with this classification of arguments relates to the following:

"Now, I think there was at least a partial attempt to show that I was over-zealous. Well, I suppose that means that I should apologize or excuse myself for being with this State Board, meaning with the County. Well, I am not going to do that because I don't think any excuse or apology is in line. I am not at all ashamed of representing the Texas State Board of Medical Examiners. The State Board of Medical Examiners, in turn, represents you, and I don't see anything wrong with and I don't think that I am over-zealous. I don't think it is fair to say that I am. We came into this court—and that is what you are here for. You are the ones to determine that. You determine whether Dr. Jacobi is right or wrong. Maybe if I was over-zealous I would get a gun and try to do this some other way, but I am appearing in court trying to do a pretty good job, if I can."

Rule 374, Texas Rules of Civil Procedure provides that a motion for new trial, when required to be filed under the rules such as is the case here, shall constitute the assignments of error on appeal or writ of error, and that a *ground of error not distinctly set forth in the motion for new trial, in the cases where motion for new trial is required, shall be considered as waived.* Since the argument here complained of is in nowise germane to either of the assignments of error contained in appellant's motion for new trial, it must be deemed that any error with respect thereto has been waived. Callahan v. Hester, Tex.Civ.App., 181 S.W.2d 294 (er. ref. w. m.); Kendall v. Johnson, Tex.Civ.App., 212 S.W.2d 232.

It is readily apparent that the argument here complained of was submitted in reply

to the preceding argument of opposing counsel in which counsel for appellee was replying to the argument of opposing counsel concerning his over-zealous attitude with respect to prosecuting the case. It appears to us that a proper instruction from the trial court to the jury not to consider this argument would have cured any harmful effect that might have otherwise arisen from the same. As said in Dallas Railway & Terminal Co. v. Bankston, Tex.Com.App., 51 S.W.2d 304, 310: "Much latitude is allowed an attorney in presenting his client's cause to the jury." In the recent case of Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596, 599, we find this statement by the Supreme Court: "Before a judgment is reversed because of argument of counsel two things must appear: the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case."

In the light of the record as a whole, we cannot say there is any more reason than not to believe that the jury's verdict in this case would have been any different if none of the errors of which complaint is made, if errors they be, had occurred. The case simply boils down in the final analysis to a contest of veracity as between the eight complaining witnesses on the one hand, and appellant on the other hand. If the complaining witnesses testified truthfully in the case, then the jury was warranted in answering all of the issues submitted to them by the trial court as they did, and the trial court was warranted in cancelling the license of appellant to practice medicine. Art. 4505, Subdivision 4 and Art. 4506 of Vernon's Tex. Civ.Stats.

All of appellant's points of error are overruled and the judgment of the court below is affirmed.

McDONALD, C. J., and TIREY, J., concur.