**David Ronald MACIAS, Appellant,**

v.

**Carole Keeton RYLANDER, in her Official Capacity as Comptroller of Public Accounts of the State of Texas, Appellee.**

No. 03–98–00513–CV.

Court of Appeals of Texas, Austin.

June 10, 1999.

Mark Osborn, Kemp, Smith, Duncan & Hammond, P.C., El Paso, for appellant.

John Cornyn, Atty. Gen., Christopher Scott Jackson, Asst. Atty. Gen., Taxation Div., Austin, for appellee.

Before Justices JONES, B.A. SMITH and YEAKEL.

LEE YEAKEL, Justice.

Appellant David Ronald Macias appeals the district court's order granting summary judgment in favor of Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas (the "Comptroller"),[1] upholding the Comptroller's suspension of Macias's customs broker's license. The district court found that substantial evidence exists to support the Comptroller's order suspending Macias's customs broker's license for 120 days based on a finding of good cause. Macias argues that summary judgment was improper because the court reviewed the Comptroller's order under an incorrect standard of review and the evidence did not support the court's disposal of the case by summary judgment. We will reverse the district court's judg-

---

1. This appeal was originally filed in the name of the predecessor to the present Comptroller. We have substituted the current holder of that office as the correct party to this proceeding. See Tex.R.App. P. 7.2(a).

ment and remand the case to that court for a trial *de novo.*

## BACKGROUND AND PROCEDURAL HISTORY

Pursuant to the Texas Tax Code, tangible personal property otherwise subject to the imposition of the sales tax imposed by the State is exempted from that tax if the property is exported outside of the United States. *See* Tex. Tax Code Ann. § 151.307(b) (West Supp.1999) ("Tax Code"). To claim the exemption, a claimant must provide proof of export. *Id.* Such proof may be shown, *inter alia,* by documentation issued by a customs broker licensed by the Comptroller bearing the appropriate export stamp and certifying that delivery of such property was made to a point beyond the territorial limits of the United States. *See id.* § 151.307(b)(2)(A)-(C). A licensed customs broker or authorized employee of the broker may issue the documents to establish such an exemption pursuant to procedures promulgated by the Comptroller by rule. *See id.* § 151.157(a).

Macias is a licensed customs broker. On March 11, 1995, Carolina Ramirez de Salinas, a Mexican citizen, purchased several items of clothing from a Marshall Field's store in San Antonio. That same afternoon, Ramirez sought an export certificate for these items from Victor Garcia, an employee of Macias. Based on Ramirez's oral and written assurances that she intended to take the merchandise to Mexico without using it in the United States, Garcia issued a stamped export certificate to Ramirez that afternoon. The certificate averred that the clothing was exported to Mexico from Hidalgo at 2:30 p.m. on March 11, 1995. However, at the time the certificate was issued, Ramirez's purchases were still in the United States. After obtaining the certificate, Ramirez returned to Marshall Field's and used the certificate to claim a sales tax exemption and receive a refund of the taxes previously paid on her purchases. Ramirez did not take the merchandise from the United States to Mexico until March 13.

Based on these events, the Comptroller notified Macias that, for good cause, she was proposing to suspend his customs broker's license for 120 days.[2] *See id.* § 151.157(f) (for good cause, Comptroller may suspend license issued to customs broker); 34 Tex. Admin. Code § 3.360(n)(3) (1998) ("TAC") (listing acts or omissions of licensed broker that constitute good cause for suspension). Macias requested an administrative hearing to contest the suspension of his license. *See* Tax Code § 151.157(f) (proceeding to suspend broker's license is a contested case under chapter 2001 of Government Code). Following a hearing, the administrative law judge ("ALJ") issued a proposed decision, finding that Macias was in violation of section 151.307(b) of the Tax Code and Comptroller rules 3.360(n)(3)(C)[3] and 3.360(n)(3)(K).[4] The ALJ *recommended* that "the 120-day suspension of [Macias's] license be probated from days 61–120 following the date of administrative finality of the final decision in this case." However, based on the ALJ's findings, the Comptroller ordered Macias's license be suspended for 120 days *without* probation.

Macias brought suit in district court, seeking judicial review of the Comptroller's order and a declaratory judgment that his license should not be suspended because issuance of the export certificate

---

2. *See* 34 Tex. Admin. Code § 3.360(n)(4) (1998) (Comptroller may suspend license for no fewer than 60 days and no more than 120 days if broker's license has not been previously suspended or revoked).

3. *See* 34 TAC § 3.360(n)(3)(C) (1998) (delivering export certification if all or a portion of the property described thereon was not actually exported at the time and place of the date reflected on the certification form constitutes cause for suspension).

4. *See* 34 TAC § 3.360(n)(3)(K) (1998) (failing to exercise responsible supervision and control over conduct of export certification business, including inadequate supervision of employees, constitutes good cause for suspension).

to Ramirez was proper. *See* Tax Code § 151.157(f) (district courts have exclusive jurisdiction to review contested cases). The Comptroller moved for summary judgment on two grounds: (1) that her decision to suspend Macias's license is supported by substantial evidence; and (2) even if the proper standard of review is by trial *de novo*, the undisputed evidence establishes as a matter of law that Macias engaged in conduct warranting suspension for 120 days. The district court granted the Comptroller's motion for summary judgment, finding that the Comptroller's order suspending Macias's license was based on good cause as shown by substantial evidence, affirming the 120–day suspension, and denying Macias's request for declaratory relief. The court's order also included "Mother Hubbard"[5] language. *See Mafrige v. Ross,* 866 S.W.2d 590, 592 (Tex.1993) ("If a summary judgment order appears to be final, as evidenced by the inclusion of language purporting to dispose of all claims or parties, the judgment should be treated as final for purposes of appeal.").

Macias complains on appeal that: (1) the district court reviewed his complaint under an improper standard of review; (2) the district court erred in granting summary judgment under any standard of review because the evidence establishes that he did not violate the Tax Code or the Comptroller's rules; (3) "under a trial *de novo* standard of review," the district court erred in affirming the 120–day suspension because there exist fact issues as to whether this is the appropriate sanction; and (4) the district court erred in denying Macias's request for declaratory relief.

## DISCUSSION

By his first issue, Macias asserts that the district court improperly applied the substantial-evidence rule when she reviewed the Comptroller's order suspending his broker's license. Macias relies on section 151.157(f) of the Tax Code, which pro-

vides that judicial review of a proceeding to suspend a customs broker's license is by trial *de novo*. *See* Tax Code § 151.157(f) ("A proceeding to suspend ... a [broker's] license ... is a contested case under Chapter 2001, Government Code. Judicial review is by trial de novo."). Notwithstanding this provision, the Comptroller urges that the district court properly reviewed her order pursuant to the substantial-evidence rule because pure *de novo* consideration of the legislative acts of an agency violates the separation of powers provision of the Texas Constitution. *See* Tex. Const. art. II, § 1. We must determine, therefore, whether a trial *de novo* of the Comptroller's charges against Macias violates the constitution, allowing only substantial-evidence review confined to the agency record.

"[W]here the legislative branch has expressly provided for review by the courts, it must clearly appear that the review exceeds judicial authority before the legislation will be held to transcend constitutional bounds." *Fire Dep't v. City of Fort Worth,* 147 Tex. 505, 217 S.W.2d 664, 666 (1949). To determine the constitutionality of a statute conferring appeal by *trial de novo* rather than *review* of an agency action, we inquire "whether the reviewing court is required to exercise a function that is deemed non-judicial." *Key W. Life Ins. Co. v. State Bd. of Ins.,* 163 Tex. 11, 350 S.W.2d 839, 847 (1961); *see also Department of Pub. Safety v. Petty,* 482 S.W.2d 949, 951 (Tex.Civ.App.—Austin 1972, writ ref'd n.r.e.) (courts are required to exercise judicial function). Stated another way, we must determine whether the actions of the administrative agency are legislative or judicial in nature. *See Key W. Life,* 350 S.W.2d at 847. If the function of the agency is legislative, judicial review is constrained by the substantial-evidence rule because the court may not substitute its judgment for that which is considered to be a legislative function. *See Petty,* 482

---

5. "A Mother Hubbard clause generally recites that all relief not expressly granted is denied."

*Mafrige v. Ross,* 866 S.W.2d 590, 590 n. 1 (Tex.1993).

S.W.2d at 951. However, when an agency has acted in a judicial or quasi-judicial capacity, a court may conduct a trial *de novo* without violating separation-of-powers principles. *See id.; see also American Diversified Mut. Life Ins. Co. v. Texas State Bd. of Ins.*, 631 S.W.2d 805, 809 (Tex.App.—Austin 1982, writ ref'd n.r.e.) (trial *de novo* proper where agency exercised quasi-judicial authority).

■ Generally, an administrative agency acts in a legislative capacity when it addresses broad questions of public policy and promulgates rules for future application "to all or some part of those subject to its power." *Key W. Life*, 350 S.W.2d at 847; *see Scott v. Texas State Bd. of Med. Exam'rs*, 384 S.W.2d 686, 691 (Tex.1964); *American Diversified*, 631 S.W.2d at 809 (trial *de novo* "not allowed where agency engaged in setting down general rules as part of its quasi-legislative power."). A judicial inquiry, on the other hand, typically involves an investigation of present or past facts and a determination of liability based on laws already in existence. *See Key W. Life*, 350 S.W.2d at 847; *Scott*, 384 S.W.2d at 691. In determining whether an administrative agency was acting in a legislative or judicial capacity, we ask whether the administrative action implements broad public policy or concerns only the parties immediately affected. *See Scott*, 384 S.W.2d at 690–91; *see also Key W. Life*, 350 S.W.2d at 847 (approval of individual insurance policy form by State Board of Insurance is quasi-judicial function, properly subject to trial *de novo* ); *Petty*, 482 S.W.2d at 952 (Department of Public Safety, in determining whether person suffering from physical handicap was incapacitated from safely operating motor vehicle, was not making general policy affecting all future cases; rather, it was determining fact related to one individual and thus trial *de novo* was proper).

■ Here, the Comptroller was clearly acting in a judicial or quasi-judicial capacity when she suspended Macias's license. The Comptroller was not in the process of promulgating rules that would broadly affect customs brokers as a whole. Instead, she engaged in a factual inquiry into the conduct of a particular individual. *See Scott*, 384 S.W.2d at 691 (fact questions inherent in Board of Medical Examiners' decision to revoke medical license typical of those decided by a judge or jury on evidence introduced in court). Specifically, the Comptroller investigated Macias's activities, applied the existing rules regarding suspension of brokers' licenses, and concluded that Macias's conduct constituted good cause for suspension. We hold that conducting a trial *de novo* of the Comptroller's charges against Macias would not violate the separation of powers provision of the constitution.

Because the district court erred in conducting a substantial-evidence review of the Comptroller's order, we will remand this case to the district court for consideration by trial *de novo*.[6]

## CONCLUSION

We reverse the district court's judgment and remand this case to that court for further proceedings not inconsistent with this opinion.

---

6. By his remaining issues, Macias argues that summary judgment is improper because there exist disputed fact issues on each ground presented by the Comptroller. However, the district court granted summary judgment on the first ground asserted in the Comptroller's motion for summary judgment: that the Comptroller's order was supported by substantial evidence. When the district court grants summary judgment, "we limit our consideration to the grounds upon which summary judgment was granted " and must remand the cause to allow the court to rule on the remaining grounds. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993) (quoting *Delaney v. University of Houston*, 835 S.W.2d 56, 58 (Tex.1992)). Therefore, we will not address the remaining issues brought by Macias on appeal as they must await district-court consideration under the correct standard.